**PEERLESS MFG. CO. v. CHATTANOOGA FOUNDRY & ROOFING CO.**

Circuit Court of Appeals, Sixth Circuit. June 20, 1928.

No. 4919.

Patents ⊕═⊃328—1,011,598, claims 1 and 4, for fireplace damper, held invalid for lack of invention.

Fitch patent, No. 1,011,598, claims 1 and 4, for fireplace damper, locating the actuating mechanism in a so-called "pocket extension," on which location claim of invention is based, *held*, in view of prior state of art, invalid for lack of invention.

Appeal from the District Court of the United States for the Eastern District of Tennessee; Xenophon Hicks, Judge.

Patent infringement suit by the Peerless Manufacturing Company against the Chattanooga Foundry & Roofing Company. Decree for defendant, and plaintiff appeals. Affirmed.

Charles E. Brock, of Cleveland, Ohio, for appellant.

Edward Finlay, of Chattanooga, Tenn. (Frank Spurlock, of Chattanooga, Tenn., on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Suit for infringement of the Fitch patent, No. 1,011,598, for a fireplace damper, issued September 12, 1911. Claims 1 and 4 are involved. They are alike in the elements called for, the difference being that claim 4 is specifically limited in its operating means. Claim 1 calls for "a fireplace damper, having a body adapted to be set in the masonry of a fireplace and provided with a pocket extension at one side opening within the body, a pivotal door hung in said body, and door-actuating mechanism arranged within the pocket extension of the body beneath the door and accessible from within the fireplace below the body without displacing the body."

Both of the claims locate the actuating mechanism in what they call a "pocket extension." It is in this location that appellant claims there is invention. Prior to Fitch, the actuating mechanism had been located near the center of the opening in the casting, where it was directly exposed to the heat and soot, or outside the casting, where it was inaccessible, or at least accessible with great difficulty, after the damper had been built in the chimney. The arrangement which Fitch made, as appellant claims, has the advantage, in the one case, of lessening the exposure, and, in the other, of making the mechanism more accessible and easier to repair. It is not, however, different in its location from Shaw, No. 697,893. Shaw, it is true, had the additional element of a partition between the actuating mechanism and the casting; but, if this partition were taken out, his device would be practically the same as Fitch's.

The claims refer to "a pocket extension" and "an interior pocketlike extension." The lower court was of opinion that Fitch's construction did not have a pocket extension, but that he had simply contracted the end of the casting around the actuating mechanism. The plaintiff's expert testified that the novelty in Fitch consisted of the pocketlike extension, which was substantially the drawing in of the side walls of the frame, and forming a part of the chamber of less width. It is not important, we think, what this space is called, as what Fitch did was to place his mechanism in a chamber accessible through the casting. He did nothing but remove the partition between the chamber housing Shaw's mechanism and the opening in the casting, or, in other words, he put the opening of the chamber on the side or bottom into the interior of the casting, rather than on the top and outside the casting, where Shaw had it. In our opinion, this was not invention.

The decree is affirmed.